UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

DARRELL WINN,                              )
   a/k/a DARRELL GREG WINN,[1]          )
                            )
      Plaintiff,                        )   Civil Action No. 0:14-CV-169-HRW
                            )
v.                                         )
                            )   **MEMORANDUM OPINION**
AMANDA WAUGAMAN, *et al.*,[2]              )   **AND ORDER**
                            )
      Defendants.                       )

**** **** **** ****

Plaintiff Darrell Winn, a/k/a Darrell Greg Winn, is an inmate confined by the BOP in the Federal Correctional Institution ("FCI")-Ashland, located in the Ashland, Kentucky. Winn has filed a *pro se* civil rights complaint asserting claims under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). [D. E. No. 1] Winn

---

[1] Winn identifies himself as "Darrell Winn," but the Bureau of Prisons ("BOP") identifies Winn, BOP Register No. 92744-020, as "Darrell Greg Winn." See http://www.bop.gov/inmateloc/ (last visited on March 23, 2015). The Clerk of the Court will be directed to list "Darrell Greg Winn" as an alias designation for Winn.

[2] Winn has identified this defendant as Amanda "Waugeman." The Court takes judicial notice of prior civil litigation in this district, in which this defendant was a party and in which her counsel identified her as Amanda "Waugaman." *See* Motion to Dismiss filed on September 10, 2007, in *McCrary v. Patton, et al.*, No. 07-CV-52-JMH (E.D. Ky.) [R. 29-2, therein; identifying the defendant as "Amanda Waugaman"] The Clerk of the Court will therefore be directed to correct the spelling of this defendant's name name on the CM/ECF docket sheet.

1

alleges that the defendants were deliberately indifferent to his serious medical needs in violation of his rights guaranteed by the Eighth Amendment of the U.S. Constitution, which prohibits cruel and unusual punishment.  Winn has previously been granted *in forma pauperis* status.  [D. E. No. 5]

The Court has conducted a preliminary review of Winn's complaint because he asserts claims against government officials and because he has been granted pauper status.  28 U.S.C. §§ 1915(e)(2)(B), 1915A.  Because Winn is proceeding without an attorney, the Court liberally construes his claims and accepts his factual allegations as true.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  But as explained below, the Court determines that as to Winn's allegations that the defendants were deliberately indifferent to his serious medical needs, and that he is entitled to specific injunctive relief, Winn has not alleged a claim upon which relief can be granted.

## ALLEGATIONS OF THE COMPLAINT

Winn states that on October 28, 2009, while he was confined in the Federal Medical Center-Butner ("FMC-Butner"), located in Butner, North Carolina, he was diagnosed as having Gastro-Esophageal Reflux Disease ("GERD") and a mild to moderate sliding hiatal hernia associated with his GERD condition.  [D. E. No. 1, P. 3, ¶ 11]  On May 29, 2009, a physician at FMC-Butner prescribed the drug

2

Ranitidine to treat Winn's GERD and hiatal hernia conditions, id., at ¶ 12, and on November 10, 2009, the same physician ordered a refill of the Ranitidine medication. *Id.*, at ¶ 13. *See also* D. E. No. 1-2, pp. 2-5.

Winn states that on April 23, 2010, after his transfer to the FCI-Bennettsville, located in Bennettsville, South Carolina, the physician at that facility examined him, acknowledged his GERD and hiatal hernia conditions and renewed his Ranitidine prescription. [D. E. No. 1, p. 4 ¶ 14]  Winn alleges that the FCI-Bennettsville physician and/or the medical staff renewed his Ranitidine prescription three more times between late July 2010 and late March 2011.  [*Id.*, pp. 4-5, ¶¶ 15-17; *see also* BOP medical reports, D. E. No. 1-2, pp. 6-15]

Winn states that on July 8, 2011, after his transfer to FCI-Pekin, located in Pekin, Illinois, Dr. Scott Moats, the physician at that facility, examined him, acknowledged his GERD and hiatal hernia conditions, and renewed his Ranitidine prescription.  [*Id.*, p. 5 ¶ 18]  Winn alleges that Dr. Moats renewed his Ranitidine prescription three times between late November 2011 and late September 2012. [*Id.*, pp. 5-6, ¶¶ 18-21; *see also* BOP medical reports, D. E. No. 1-2, pp. 16-26]

By late March 2012, Winn had been transferred to the United States Penitentiary ("USP") Atlanta, in Atlanta, Georgia.  Winn alleges that on March 26, 2013, Dr. "D." Martin, a prison physician, examined acknowledged his GERD and

hiatal hernia conditions, and renewed his Ranitidine prescription. [*Id*., p. 5 ¶ 22; *see also* BOP medical reports, D. E. No. 1-2, pp. 27-29]

By early April 2014, Winn had been transferred to the FCI-Ashland. Winn states that on April 2, 2014, the FCI-Ashland medical staff examined him during the course of a Chronic Care Encounter. [*Id*., pp. 6-7, ¶ 23] Winn claims that on April 14, 2014, Defendant Kenneth Gomez, M.D., discontinued his Ranitidine 150mg prescription after reviewing his purchases from the prison commissary and concluding that he had been buying "junk food." [*Id*., p. 7, ¶ 24] Winn attached to his complaint the three-page BOP Health Services Clinical Encounter dated April 2, 2014 [D. E. No. 1-2, pp. 30-32], which shows a "Stop Date" of April 19, 2014, for not only Winn's Ranitidine HCl 150mg prescription, but also for his Gabapentin 300mg prescription. [*Id*., p. 31]

Winn alleges the he took all necessary steps under the BOP's administrative remedy process to exhaust his claim that Dr. Gomez had improperly discontinued his Ranitidine prescription. [*Id*.][3] Winn states that in response to his request for an informal remedy, both Dr. Gomez and Defendant Amanda Waugaman, the

---

[3] Winn's attachment docketed as D. E. No. 1-2, p. 1, is his October 8, 2014, inquiry about the status of his BP-11 appeal to the BOP's Central Office, which is the final step of the BOP's four-step administrative remedy process. The Administrative Remedy Coordinator's responded that the BOP's response was due on or before October 6, 2014, and that absent a response, Winn could proceed "to the next level." [*Id*.] Pursuant to 28 C. F. R. § 542.18, a prisoner can treat the absence of a response as a denial of his request for an administrative remedy or appeal.

Medical Administrator of FCI-Ashland, informed him that he could purchase from the commissary the medication that he needed to treat his GERD condition.  [*Id.*]

Winn alleges that in refusing to continue his Ranitidine prescription, Dr. Gomez was deliberately indifferent to his GERD and hiatal hernia conditions, and thus violated his rights guaranteed by the Eighth Amendment of the U.S. Constitution.  Winn further alleges that in denying his request for an informal remedy, Amanda Waugaman was also deliberately indifferent to his serious medical needs in violation of the Eighth Amendment of the U.S. Constitution. Winn seeks a declaratory judgment finding that the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment, and injunctive relief in the form of an order requiring the defendants to renew his Ranitidine 150mg prescription until he is released from BOP custody.[4]

## DISCUSSION

A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it. *Overstreet v. Lexington-Fayette Urban County Gov't.*, 305 F.3d 566, 573 (6th Cir. 2002)  To obtain a preliminary injunction, a plaintiff must show (1) "that he is likely to succeed on the merits," (2) "that he is

---

[4] According to the BOP's website, Winn's projected release date is August 5, 2018. *See* http://www.bop.gov/inmateloc/ (last visited on March 23, 2015, re: Darrell Greg Winn, BOP Register No. 92744-020).

likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997) "These factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet*, 305 F.3d at 573. However, the failure to show a likelihood of success on the merits is usually fatal. *Gonzales v. National Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000) The plaintiff bears the burden of proving that an injunction is proper, *Overstreet*, 305 F.3d at 573, and the proof required for a plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)

As for the first criteria analyzed when considering whether a preliminary injunction is warranted, Winn has not shown that he is likely to succeed on the merits of his Eighth Amendment claims. Winn alleges that the defendants have been deliberately indifferent to his medical needs, but such a claim requires him to show both that the "alleged mistreatment was objectively serious," and that the officials "subjectively ignored the risk to the inmate's safety." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) This standard is particularly challenging to meet

6

in cases such as Winn's, where a prisoner has received care, and the dispute is over whether the prison committed enough resources to the prisoner's treatment. It may be the case that treatment which is "so cursory as to amount to no treatment at all may amount to deliberate indifference," *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002) (quoting *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir.1989)), but "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976)   One district court has aptly observed, "Claims of deliberate indifference to medical needs are difficult to prove." *Rhinehart v. Scutt*, No. 2:11-CV-11254, 2012 WL 175420, at *3 (E.D. Mich. Jan. 22, 2012).

Winn alleges that by terminating his Ranitidine 150mg prescription, Dr. Gomez was deliberately indifferent to his serious medical needs, but federal courts have also consistently held that a medical provider has not been deliberately indifferent to a prisoner's medical needs if he or she decides to withhold a certain medication based on either "medical judgment" or other valid penological concerns. *See, e.g., Williams v. Rodriguez*, No. 10-2715, 2012 WL 1194160, *10 (N. D. Cal. Apr. 10, 2012) ("Though, plaintiff would have preferred morphine, a difference of medical opinion is not sufficient by itself to make out a violation of

the Eighth Amendment."); *Todd v. Bigelow*, No. 09-CV-808, 2012 WL 627965, *6 (D. Utah Feb. 24, 2012) (finding no deliberate indifference when inmate was offered other, alternative pain medications); *Shockley v. Fox*, 444 F. App'x 36, 38 (5th Cir. 2011) (rejecting prisoner's claim that the prison medical staff's refusal to administer narcotic pain medication violated his Eighth Amendment rights); *Cutler v. Correctional Medical Services*, No. 3:08-CV-00507-BLW, 2011 WL 4479025, at *9-*10 (D. Idaho, Sept. 26, 2011) (same); *Hood v. Prisoner Health Services, Inc.*, 180 F. App'x 21, 25 (10th Cir. 2006) (same).

Winn now asks this Court to intervene in the prison's handling of his health care decisions and order FCI-Ashland's officials to provide him with medication which its physician has determined should be discontinued. Before a district court "undertakes to override the prerogatives of . . . correctional authorities in the administration of any aspect of prison administration, it must assure itself that no less intrusive means of bringing about compliance with constitutional requisites is available." *Glover v. Johnson*, 855 F.2d 277, 286 (6th Cir. 1988).

On April 2, 2014, Gomez conducted a thorough examination of Winn, *see* BOP Health Services Clinical Encounter of April 2, 2014 [D. E. No. 1-2, pp. 30-32], and determined that a change in Winn's medication regimen was warranted. Winn has not alleged facts indicating that Dr. Gomez was deliberately indifferent

8

to his serious medical needs; what Winn alleges is that he disagreed with Dr. Gomez's decision to terminate his Ranitidine prescription. That claim, however, amounts to nothing more than a difference of opinion as to the nature, extent, and sufficiency, of the medical treatment which Dr. Gomez rendered to him, and thus does not qualify as a claim of deliberate indifference to a serious medical need in violation of the Eighth Amendment of the U.S. Constitution.

As explained above, neither medical negligence nor a difference of opinion as to the wisdom or correctness of a medical judgment is insufficient for the purpose of a deliberate indifference claim. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Sanderfer v. Nichols*, 62 F.3d 151, 154–55 (6th Cir. 1995)  "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake*, 537 F.2d at 860 n. 5 (6th Cir. 1976); *see also Clark v. Corrections Corporation of America*, 98 F. App'x 413, 416 (6th Cir. 2004); *Simpson v. Ameji*, 57 F. App'x 238, 239 (6th Cir. 2003).  Because the Court determines that Winn's Eighth Amendment deliberate indifference claim lacks a likelihood of success on the merits, the Court will not interfere with Dr. Gomez's decision and order the injunctive relief which Winn requests.

As for the second factor to be considered under the preliminary injunction analysis, Winn alleges no facts showing that he will suffer irreparable harm if the injunction is not issued. Winn alleges that Dr. Gomez told him that he could purchase medication for his GERD conditions at the prison commissary, and accepting that allegation as true, Winn does not allege that he is unable to purchase over-the-counter ("OTC") GERD medication from the prison commissary; he merely bemoans the fact that Dr. Gomez discontinued his Ranitidine prescription.

Winn does not allege that OTC medication is either inferior to or less effective than Ranitidine, nor does he explain why he objects to the termination of the prescription, although one could speculate that Winn may not wish to spend his inmate account money on an OTC medication if it can be furnished to him at the government's expense. Winn merely alleges that he objects to the discontinuation of the Ranitidine prescription, stating that the physician at FMC-Butner originally prescribed it in May 2009, and that between April 2010 and March 2012, the physicians and/or medical staffs at FCI-Bennettsville, USP-Pekin, and USP-Atlanta, ordered refills of the prescription. Dr. Gomez was not, however, bound to follow prior medical recommendations; after examining Winn in April 2014, and reviewing Winn's medical history, he was free to reach a different conclusion about how to most effectively treat Winn's GERD and hiatal hernia conditions.

10

Further, Dr. Gomez terminated the Ranitidine prescription on *April 2, 2014*, which was approximately one year ago, and at that time, he implemented a new treatment plan.  Winn has neither alleged nor filed any medical documentation suggesting that his GERD and hiatal hernia conditions, or any other aspect of his physical condition, have actually worsened or deteriorated over the past year.

Next, Winn fails to satisfy the third criterion of the preliminary injunction analysis, *i.e.*, he alleges no facts which even remotely suggest that the denial of the requested injunction would cause substantial harm to others.  Even absent any such factual allegations from Winn, the Court is faced with balancing Winn's interest in receiving specific prescription medication (which the physician has determined should be discontinued) with the defendants' presumed interests in managing their medical procedures and resources and avoiding interference from a federal court. Given the unlikelihood of success of Winn's underlying Eighth Amendment claim, and the apparent absence of irreparable harm to Winn, the balance weighs against issuing a preliminary injunction.

Finally, because Winn does not allege that the public interest would be served by issuing the injunction, he fails to satisfy the fourth criterion of the preliminary injunction analysis. In constitutional cases, an inquiry into the public interest is difficult to separate from the likelihood of success on the merits because

11

"the public interest is promoted by the robust enforcement of constitutional rights." *Am. Freedom Def. Initiative v. Suburban Mobility for Reg. Transp.*, 698 F.3d 885, 896 (6th Cir. 2012) However, in the absence of a likely constitutional violation, the district courts correctly recognize that the concepts of separation of powers and federalism strongly discourage federal courts from entangling themselves in the administration of prison health care systems. *See, e.g., Turner v. Safley*, 482 U.S. 78, 84–85 (1987); *Bell v. Wolfish*, 441 U.S. 520, 544 (1979); *Preiser v. Rodriguez*,411 U.S. 475, 491–92 (1973). The public interest in leaving the administration of federal prisons to federal prison administrators is another factor weighing against preliminary injunctive relief in this case.[5]

Finally, Winn alleges that by denying his administrative remedy request, Amanda Waugaman was deliberately indifferent to his serious medical needs. Winn identified Waugaman as a prison administrator, *i.e.,* the Medical

---

[5] Because Winn seeks an order requiring the defendants to provide him with specific prescription medication until the date on which he is released from the BOP's custody, the Court has analyzed his request as one seeking a preliminary injunction. Even if the Court considered Winn's request as one seeking a *permanent* injunction, it would fare no better. The criteria for the issuance of a permanent injunction requires that a plaintiff demonstrate, "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC,* 547 U.S. 388, 391 (2006). For the reasons set forth above, in denying Winn's construed request for a preliminary injunction, Winn's has not alleged facts which would warrant the issuance of a *permanent* injunction.

12

Administrator of FCI-Ashland, but he does not allege that Waugaman is a physician, or that she in any way participated in his medical treatment.

Prison administrators, such as the warden, associate warden, and hospital administrator cannot be held liable under a theory of *respondeat superior* merely because they failed to remedy a grievance presented by a prisoner. *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988); *see also*, *Pounds v. Myers*, 76 F. App'x 630, 632 (6th Cir. 2003) ("The district court properly concluded that the named defendants-the   warden,   associate   warden,   hospital   administrator,   and commissioner-could not be held liable merely on the basis that they failed to remedy a grievance presented by Pounds.").   In other words, the denial of a grievance or the failure to act upon a grievance is insufficient to establish liability under *Bivens*. *See Alder v. Correctional Medical Services*, 73 F. App'x 839, 841 (6th Cir. 2003); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Constitutional liability under must be based on active unconstitutional behavior. *Shehee*, 199 F.3d at 300.

Even if Waugaman, in her capacity as FCI-Ashland's Medical Administrator, had been aware that Winn was dissatisfied about the change in his medication, such information would not have been enough to subject her to liability under *Bivens*, as to Winn's Eighth Amendment claim that Dr. Gomez

failed to provide him with the type of medication that he desired. "A supervisor's awareness of allegations of unconstitutional conduct and failure to act are not a basis for liability." *McCurtis v. Wood*, 76 F. App'x 632, 634 (6th Cir. 2003; *Roark v. Robertson*, No. 5:10CV–P147–R, 2010 WL 5092776, at *2 (W.D. Ky. Dec. 7, 2010) ("Defendant Thompson's position as Commissioner of the Kentucky Department of Corrections does not automatically make her liable for the actions/inactions of her subordinates."); *Brown v. Green*, No. 97–1117, 1997 WL 777979, at *2 (6th Cir. Dec. 12, 1997) ("Defendant Green, being sued in her official capacity as the Medical Director of the Michigan Department of Corrections, cannot be held liable for an alleged constitutional violation, because the doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto supervisory personnel."); *Farrow v. West*, 320 F.3d 1235, 1238 n. 1 (11th Cir. 2003) (holding that the regional director of prison medical services was not liable for actions of subordinate medical staff).

For these reasons, the Court declines to issue either a preliminary or a permanent injunction directing the defendants to administer Ranitidine 150 mg prescription medication to Winn until he is released from the BOP's custody. The Court also declines to enter a declaratory judgment finding that either of the named

14

defendants violated Winn's Eighth Amendment rights.   The Court will dismiss Winn's complaint for failure to state a claim upon which relief can be granted.

## CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1)    The Clerk of the Court **SHALL LIST**, on the CM/ECF cover sheet, "Darrell Greg Winn" as an alias designation for Plaintiff Darrell Winn, and **SHALL AMEND** the spelling of Defendant Amanda Waugaman's name on the CM/ECF docket sheet to reflect the correct spelling of her name, which is "Amanda Waugaman," not "Waugeman."

(2)    Winn's 28 U.S.C. § 1331 civil rights Complaint [D. E. No. 1] is **DISMISSED WITH PREJUDICE**.

(3)    Judgment will be entered contemporaneously with this Memorandum Opinion and Order in favor of the named defendants.

This April 8, 2015.



Signed By:
*Henry R. Wilholt, Jr.*
United States District Judge

15